Catherine BODDIE, Lillian Jackson, Thelma Moore and Eldena Kazimer, Individually, on behalf of their minor children and all other persons similarly situated, and Jamie Evans, Evelina Privott, Alice Dodge, Lela Easley, as Individuals and on behalf of all other persons similarly situated, Plaintiffs,

v.

George K. WYMAN, individually and in his capacity as Commissioner of Social Services for the State of New York, and the Department of Social Services for the State of New York, Defendants.

No. 70-CV-200.

United States District Court,
N. D. New York.

Oct. 2, 1970.

Steven J. Cole, Louise Lander, Henry A. Freedman, New York City, for plaintiffs.

Dennis B. Schlenker, Albany, N. Y., for plaintiffs Boddie, Evans, Privott, Jackson and Dodge, Legal Aid Society of Albany, Inc.

Robert D. Kolken, Buffalo, N. Y., for plaintiffs Moore and Easley, Legal Aid Bureau of Buffalo, Inc.

Richard A. Ellison, Syracuse, N. Y., for plaintiff Kazimer, Onondaga Neighborhood Legal Services, Inc.

Louis J. Lefkowitz, Atty. Gen., of the State of New York, Albany, N. Y., for defendants; Donald C. Glenn, Douglas S. Dales, Jr., Asst. Attys. Gen., of counsel.

James M. Sullivan, Jr., U. S. Atty., Northern District of New York, Syracuse, N. Y., amicus curiae; Brian F. Mumford, Asst. U. S. Atty., of counsel.

JAMES T. FOLEY, Chief Judge.

### MEMORANDUM—DECISION and ORDER

The eight named plaintiffs for themselves and others similarly situated seek declaratory and injunctive relief against a specified New York statute and regulations promulgated by the defendants for its implementation. The statute sought to be declared invalid and its operation enjoined is New York Social Services Law § 131–a, as amended by Chapter 517, Laws of New York 1970, and Title 18 New York Code of Rules and Regulations (NYCRR) § 352.2(d). Four of the plaintiffs receive public assistance under

New York public assistance program entitled Aid to Families with Dependent Children (AFDC) and four come under the Aid to the Aged, Blind, or Disabled program (AABD). These New York programs as do all the other states receive considerable federal funds for their implementation. The complaint alleges that New York annually receives almost 450 million dollars from the federal government to assist these worthy endeavors.

The challenge is that the state statute and the administrative regulation to carry out its purposes are violative of the Fourteenth Amendment of the federal Constitution, and certain alleged mandatory provisions of the Social Security Act of 1935, §§ 402(a) (1) and 1602(a) (1), 42 U.S.C. §§ 602(a) (1) and 1382(a) (1), and specific regulations and particular subdivisions promulgated pursuant to these laws by the United States Department of Health, Education and Welfare (HEW) found in 45 C.F.R. 233.-20, 34 Fed.Reg. 1394 (1969). The essence of the issues raised by the complaint is whether the admittedly lower welfare payments made to social service district residents outside of New York City under schedules the defendants promulgated were made in such manner as to create differences wholly arbitrary and unjustifiable and in conflict with the federal statutory and regulation provisions as well as constituting arbitrary and irrational inequality in violation of the Equal Protection Clause of the Fourteenth Amendment.

After this suit was filed, an order was signed by me for the defendants to show cause why the action should not be treated as a class action and a three-judge court convened. Both of these requests were ultimately granted. It was clear from previous federal judicial writings, one arising from challenge to a recent predecessor statute to the one challenged here and involving similar factual circumstances of larger welfare payments to New York City residents than those paid to eight surrounding counties of New York City, that the requirement of federal substance based upon the ground of the unconstitutionality of the New York statute was met. (Rothstein v. Wyman (SDNY-Three Judge Court), 303 F. Supp. 339; remanded sub. nom. Wyman v. Rothstein, 398 U.S. 275, 90 S.Ct. 1582, 26 L.Ed.2d 218, June 1, 1970; 28 U.S.C. §§ 2281–84). This order to show cause requested also preliminary injunctive relief which in these situations must be heard and determined by the district court of three judges. Pursuant to the statute, upon my notification, Chief Judge Lumbard designated Circuit Judge Feinberg, Judge Port and me as members of the Court to hear and determine the action. Later, this statutory court without the formality of convening by order based upon stipulation of the attorneys remanded the claim of statutory conflict to me as a single judge to decide. (See Rosado v. Wyman, 397 U.S. 397, at p. 403, 90 S.Ct. 1207, 25 L.Ed.2d 442, Justice Douglas, concurring, at p. 424, 90 S.Ct. 1207, 25 L.Ed.2d 442). By renewed motion for preliminary injunction directed to me now as single judge, a hearing was held in due course on such application. Previous to the hearing answer had been filed for defendants, admissions requested by plaintiffs answered, deposition of the Commissioner taken and transcript of it filed on the day of the hearing. A substantial record was thereby compiled for presentation at the preliminary injunction hearing and the extensive briefing of the plaintiffs previously filed with the three-judge court with follow-up reply and supplementary memorandum became part of the single judge submission. In accord with the admonition by the Supreme Court that the district court should obtain the views of HEW in these cases such participation was invited, and a helpful amicus curiae brief for the United States has been filed herein together with recent correspondence between the federal and state welfare agencies concerning the continuing effort to work out this problem by an administrative level agreement. (See Rosado v. Wyman, supra, pp. 406–407, 90 S.Ct.

1207, 25 L.Ed.2d 442; also Justice Black, dissenting, pp. 430–435, 90 S.Ct. 1207, 25 L.Ed.2d 442; Dandridge v. Williams, 397 U.S. 471, 515, 90 S.Ct. 1153, 25 L.Ed. 2d 491 (Marshall J., concurring); Lewis v. Martin, 397 U.S. 552, at 560, 90 S.Ct. 1282, 25 L.Ed.2d 561 (Black J., dissenting); at p. 563, 90 S.Ct. 1282, 25 L.Ed.2d 561 (Ch. Justice Burger, dissenting); 42 U.S.C. §§ 604, 1316). Justice Black and Chief Justice Burger remain firm in their conviction that the Social Security Act has unmistakable intent in its provisions to give primary jurisdiction to HEW "over these highly technical and difficult welfare questions" and for allowance of the usual exhaustion of the administrative procedure before court intrusion. Such analysis is appealing and persuasive to me but there is no freedom for such conclusion on my part due to express rulings decisively to the contrary by the highest judicial authority. (Rosado v. Wyman, supra, 397 U.S. pp. 405–406, 420, 90 S.Ct. 1207, 25 L.Ed. 2d 442). I do mark as Court Exhibit 1, the recent correspondence on an administative federal-state level evidencing again the disapproval of HEW with the New York Plan attacked in this litigation. Attached thereto is the explanatory answer of Attorney Cole for the plaintiffs outlining the delay, despite the request of the Acting Regional Commissioner for prompt action, that may occur under HEW pertinent regulations before final decision of disapproval of the State plan may be forthcoming from the Administrator of the Social and Rehabilitation Service that the Administrator can only make after consideration and discussion with the Secretary of Health, Education and Welfare.

An important development at the hearing for preliminary injunction was that the attorneys for the parties stipulated in open court that the submissions for preliminary injunction may in accord with Federal Rule of Civil Procedure 65 (a), be deemed to constitute a trial on the merits of the statutory claim. However, despite this agreement subject to be accepted by order of the Court, I think there is good reason present to decide herein only the preliminary injunction with application only of the well-settled principles in appraisal of the present record for limited decision of that nature.

In the Rothstein case, the scholarly opinion of Judge Mansfield for the Three-Judge District Court demonstrates a studied and careful analysis of law and similar facts definitely applicable to this action. The remand of the Supreme Court in Rothstein was to the District Court "for an opportunity to pass on the propriety of granting *interim relief* in accordance with *conventional equitable principles* on the basis of appellees' statutory claims, or if the question is reached, continuing the present injunction in light of the Court's decision in Dandridge v. Williams, 397 U.S. 471 [90 S.Ct. 1153, 25 L.Ed.2d 491] (1970)." (Emphasis supplied). The point I make in support of my approach to consider only interlocutory injunctive relief is that the remand of the Supreme Court was for that purpose in Rothstein. The District Court had only granted preliminary relief upon the customary showing of probable success and irreparable injury. It is my understanding that the District Court remanded the statutory claim to Judge Motley as a single judge as done here. I believe sincerely that it would be presumptuous on my part to hand down a decision on the merits almost exactly similar to an action that has been under the scrutiny of three lower federal court judges and of the United States Supreme Court. Judge Motley has held her hearing on the matter and I am willing, and think it in the interests of order and good judgment, to await her decision that might ultimately decide the merits here in reasonable time. As a second reason for my approach to confine myself to interlocutory relief, I think the administrative processes are at a stage where the federal statutory directives to HEW might bring resolution of this dispute. Further, Justice Harlan viewed with concern our increasing involvement in this area of welfare benefits that he described as a high-

ly complicated one. (Rosado v. Wyman, supra, 397 U.S. p. 422, 90 S.Ct. 1207, 25 L.Ed.2d 442). It is my impression from study of the maize of federal and state statutes, and detailed regulations thereunder, that the description of substantial complexity may be viewed by some as an understatement. At least there is enough to warrant justifiably interim relief without awaiting a passage of a substantial period of time for further study. (See Ramos v. Health and Social Services Board (E.D.Wis.), 276 F. Supp. 474). Seldom is it my disposition to avoid direct confrontation with every issue and adjudge all of them, if possible, but I think there are deserving considerations for my position here.

Insofar as the elements necessary to be present for grant of preliminary injunction, in my judgment, there is strong showing and support for them by the plaintiffs' submission. At the outset the recent correspondence of HEW (Court Ex. 1) has unequivocally disapproved the State's standards of assistance as promulgated by the Commissioner after the passage of Chapter 517, Laws of N.Y.1970, and set forth in 18 NYCRR § 352.2. These schedules, set forth in geographical divisions of the State by symbols SA–1, SA–2, and SA–3, listing in certain groups the numerous New York State counties, are the ones directly challenged in this action. The writing of District Judge Mansfield, joined in by the other two associate Judges, is the best evidence in itself that gives insurmountable support I find for the likelihood of success requirement. To weigh the success likelihood, important consideration must be given to the fact that after the vacating of the judgment in Rothstein by the Supreme Court, assumedly causing the fall of the preliminary injunction, Commissioner Wyman pursuant to his discretionary authority in Chapter 517 to meet federal requirements has continued to pay to public assistance recipients in seven so-called surrounding counties of New York the New York City higher level payments. This is done it is stated in the defendants brief to avoid administrative chaos pending final decision in Rothstein. The deposition of Commissioner Wyman recently taken for this record again attests in my judgment there is failure of objective support for the differentials promulgated for standard of need assistance difference between upstate and New York City. The studies of the Department of Social Services for the State of New York in 1968 confirmed there was no variation in the cost of items included in the flat recurring grant throughout the State and this again was confirmed by Commissioner Wyman. (Wyman deposition filed 7/24/70). There is an abundance of facts and data favoring plaintiffs' cause to provide convincing support that likelihood of success may be foreseen with reasonable certainty. (See Unicon Management Corp. v. Koppers Co., 2 Cir., 366 F.2d 199; Packard Instrument Co. v. Ans, Inc., 2 Cir., 416 F.2d 943). A good table setting forth the Commissioner's promulgated schedules SA–1, SA–2, SA–3, with percentage disparity computed is on page 7 of the plaintiffs' substantial main brief originally filed with the three-judge court for preliminary injunction.

There are several contentions advanced for the Attorney General on the likelihood of success showing. The position that the Commissioner relies upon legislative findings instead of objective fact finding regarding item costs is highly questionable when it seems undisputed the legislative findings are without factual support also. Such findings may have been erased by enactment of the new law and repeal of the old in June 1970. The only contention that strikes me as possessing substance is the one that the gravamen of the complaint is based mainly upon alleged non-conformity with federal regulations requiring a state plan objective and equitable to thus assure a uniform statewide standard. It is argued the alleged non-conformity in this instance is only with federal regulations, and not the federal statute, and therefore injunctive relief is totally unwarranted.

In my judgment, the contention is untenable because a fair reading of the federal statute imparts at least arguably and with reasonable certainty the necessity for statewideness and uniformity in standard of need for public assistance recipients despite the place of residence in the State. Further, the Supreme Court and other federal courts in public assistance plan problems have accorded the regulations the force and effect of law if in conformance with the statute. (King v. Smith, 392 U.S. 309, 317, 88 S.Ct. 2128, 20 L.Ed.2d 1118; Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561; New Amsterdam Casualty Co. v. Novick Transfer Co., 4 Cir., 274 F.2d 916, 919; Solman v. Shapiro (D. Conn.), 300 F.Supp. 409, 413, 416; aff'd. 396 U.S. 5, 90 S.Ct. 25, 24 L.Ed.2d 5). Legislative rules and regulations promulgated by administrative bodies under proper statutory authority are usually given the force and effect of statutory law. (Sutherland Statutory Construction, 3rd Ed., Vol. 3, p. 291; Atchison, T. & S. Ry. Co. v. Scarlett, 300 U.S. 471, 57 S.Ct. 541, 81 L.Ed. 748). There is express and broad authority for the Secretary to make and publish rules and regulations consistent with the statute. (42 U.S.C. § 1302).

Irreparable harm and injury was found to exist in Rothstein v. Wyman by Judge Mansfield, sufficient to warrant the preliminary injunction for that reason and the lower payments complained of by plaintiffs here are not significantly different moneywise. Judge Mansfield noted in Rothstein that if the defendants ultimately prevailed any differentials paid in the interim would be recoverable or offset against future allowances. Welfare provides the means to qualified recipients to obtain essential food, clothing, housing and medical care. (Goldberg v. Kelly, 397 U.S. 254, 264, 90 S.Ct. 1011, 25 L.Ed.2d 287). There is no doubt from the affidavits supporting the motion for preliminary relief that the differences sought in payments by the plaintiff are extremely important in respect to these things daily and in that

sense when the day passes the injury or harm that may occur is irreparable.

These statements do not mean that New York has been miserly in its public assistance programs. It is stated in the State brief and I accept it as fact that New York has a standard of need or eligibility that is the highest in the United States. From my review here, it is also evident that New York through its legislature and administration has been plagued by Court rulings of complexity and magnitude and in my judgment in the balancing of the public assistance needs and the public taxpayers interests has acted in complete good faith in efforts to comply with federal requirements. It was decided early that the States have considerable latitude in allocating resources set aside for public assistance and are free to set their own standard of need and determine the level of benefits by the amount of funds it devotes to the program. (King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118). This principle was reiterated in April 1970, in Dandridge v. Williams, supra, wherein Justice Stewart referred to the right of the States to reconcile the demands of its needy citizens with the finite State resources available by methods permissible and in conformity with the federal law and Constitution.

There is a serious and troublesome question as to whether the injunction herein should be limited to restraining the payment and further use of federal monies pursuant to the new statute and schedules of New York involved here. (See Rosado v. Wyman, 397 U.S. 397, 421–422, 90 S.Ct. 1207, 25 L.Ed.2d 442; King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118; Catholic Med. Cen. of Brooklyn & Queens, Inc. v. Rockefeller (EDNY), 305 F.Supp. 1268, 1270–1271; aff'd 2 Cir., 430 F.2d 1297, 7/29/70). The plaintiffs recognize the seriousness of the question but offer distinctions between the Rosado and King situations. I think the distinctions are sound and valid. There is not present here the massive amounts of expenditures and absence of a discrete and severable

**1194**

provision whose enforcement can be prohibited. These were the bases in Rosado as I read it for not considering the King remedy as appropriate in the Rosado circumstances. The preliminary injunction is granted and the interim injunctive relief shall be to the extent sought and worded in the renewal of motion, enjoining the enforcement of NYSSL § 131–a, as amended by Chapter 517, Laws of N.Y.1970, and 18 NYCRR § 352.2(d), effective June 1, 1970, in respect to AFDC and AABD grants and allowances not made according to objective and non-discriminatory standards based upon costs of needs of applicants and recipients. This Court shall proceed to final disposition of the merits unless within 60 days after entry either of the parties notify the Court that further hearing, argument or briefing is desired. This decision constitutes the findings of facts and conclusions of law pursuant to F.R.Civ. Proc. 52(a). The injunctive order shall be in accord with the provisions of F.R. Civ.Proc. 65(d).

Settle order on three days notice.

It is so ordered.