Edna **ROTHSTEIN** et al., Plaintiffs,

v.

George **K. WYMAN**, as Commissioner of the Department of Social Services of the State of New York, and the Department of Social Services of the State of New York, Defendants.

No. 69 Civ. 2763.

United States District Court,
S. D. New York.

Dec. 7, 1970.

The Legal Aid Society of Westchester County by Norman B. Lichtenstein, White Plains, N. Y., Leonard S. Clark by Burr C. Hollister, Nassau County Law Services Committee, Inc., Westbury, N. Y., M. James Spitzer, Jr., National Welfare Rights Organization, New York City, Edward V. Sparer, Philadelphia, Pa., for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., State of New York by Amy Juviler and Michael Colodner, Asst. Attys. Gen., New York City, for defendants.

OPINION

MOTLEY, District Judge.

Plaintiffs are AABD[1] and AFDC[2] welfare recipients residing in Nassau and Westchester Counties, New York. Over a year ago they brought this proceeding to challenge § 131–a of the New York Social Services Law, McKinney's Consol.Laws, c. 55 and the regulations promulgated thereunder which provide a lower monthly public assistance grant to welfare recipients in counties immediately adjacent to New York City than is provided to recipients residing inside City boundaries.[3] Plaintiffs attack the differential in public assistance grants as being violative of 1) the Social Security Act and federal regulations, 42 U.S.C. § 602(a) (1) and § 1382(a) (1); 45 C.F.R. § 233.20; Federal Handbook of Public Assistance, Part II, § 4000 et seq., and (2) the Equal Protection Clause of the Fourteenth Amendment.

The facts and prior stages of this litigation have been sufficiently described. See Rothstein v. Wyman, 303 F. Supp. 339 (S.D.N.Y.1969), *vacated*, 398 U.S. 275, 90 S.Ct. 1582, 26 L.Ed.2d 218 (1970). For the present purpose it is enough to briefly summarize the history of this case.

Plaintiffs' instant motion for an injunction is, in effect, the renewal of a similar motion made in June, 1969. At that time a three-judge court found that plaintiffs had shown a likelihood of success on their constitutional claim and granted preliminary relief on that basis. Rothstein v. Wyman, *supra*. The Court delayed its decision on the federal statutory claim because of a pending review of the matter by the Department of Health, Education and Welfare (hereinafter "HEW").

On appeal the Supreme Court held that the federal statutory claim should be preliminarily decided in advance of any decision on constitutional grounds. The Court vacated the injunction and remanded the case to the District Court

"for an opportunity to pass on the propriety of granting interim relief in accordance with conventional equitable principles on the basis of appellees' statutory claims, or if the question is reached, continuing the present injunction in light of this Court's decision in Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153 [25 L.Ed.2d 491] (1970)." Rothstein v. Wyman, *supra*, 398 U.S. at 276, 90 S.Ct. at 1583.

After this remand, the three-judge court met and remanded the case to the present single judge for a hearing on the statutory claim. At that hearing the attorneys for the parties agreed that the trial of the action on the merits should be advanced and heard with the hearing on the preliminary injunction. The court accepted this agreement and pursuant to Rule 65(a) (2), Fed.R.Civ.P., consolidated the hearing on the preliminary injunction with the trial on the merits.

1. AABD recipients are those people who receive aid under the combined program of Aid to the Aged, Blind and Disabled. 42 U.S.C. § 1382.

2. AFDC recipients are those people who receive aid under the program of Aid to Families with Dependent Children. 42 U.S.C. § 602.

3. The counties immediately adjacent to New York involved in this suit are Nassau, Dutchess, Greene, Monroe, Suffolk, Ulster and Westchester. At one time, these counties, as well as New York City were included within the same region for purposes of benefits under the Social Security Act. This region was known as SA–1.

*Present New York Schedules*

Since the decision by the three-judge court, New York has twice revised § 131–a and the Commissioner has issued new regulations. The first change in § 131–a took effect April 1, 1970 and provided for a 10% cost of living increase to welfare recipients. Chapter 120 of the Laws of 1970. However, the Act continued to provide higher levels of grants to recipients in New York City than to recipients in the surrounding SA–1 counties. In addition, the Act set forth legislative findings as to why New York City residents received higher grants than the residents of surrounding counties.

Shortly after this amendment the legislature responded to the decision of the Supreme Court in Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), and repealed § 131–a in toto, replacing it with a new § 131–a in Chapter 517 of the Laws of 1970. The present § 131–a provides for levels of grants as follows (in dollars):

NUMBER OF PERSONS IN HOUSEHOLD

|  | 1 | 2 | 3 | 4 | 5 | 6 | Each Additional |
|---|---|---|---|---|---|---|---|
| New York City | 84 | 134 | 179 | 231 | 284 | 329 | 45 |
| Outside New York City | 66 | 111 | 156 | 201 | 246 | 282 | 36 |

As can readily be seen, the new law continues the disparity in grants between New York City and the rest of the state. It is this disparity that plaintiffs contend violates the Social Security Act and the HEW regulations. Section 131–a also provides: 1) that defendant Wyman can raise or lower allowances if the total cost of the items included in the grant differs from the statutory levels, and 2) that the defendants must adjust any schedule of grants and allowances "[i]f federal requirements make it necessary."

Defendant Wyman promulgated regulations implementing § 131–a with a defined standard of need and three schedules of allowance. Bulletin 134, Administrative Letter 70 PWD–36; 18 N.Y.C. R.R. § 352.1, and § 352.2. Contrary to the schedules set forth in the statute, the regulations treated New York City and the surrounding counties (the old SA–1 counties) as one unit to receive the allowance levels provided by the statute to New York City. Defendants admit that this was done only because of the court order in the original *Rothstein* case. Bulletin 134, Administrative Letter 70 PWD–36. In expressly using this court's order as a basis for equal allowances, the defendant has clearly made known his intention to provide lower grants for plaintiffs in surrounding counties than to residents of New York City should the court's directive not be reinstated.[4] Therefore, no mootness issue is presented. The only guide to the extent of defendant's contemplated administrative schedule of lower grants is found in his initial schedule (promulgated prior to the original Rothstein case) of grants 7–16% below the New York City schedule.

*Issues Presented*

■ The disparity in the level of the schedules prescribed by the legislature for New York City and for its surrounding counties presents the court with two issues: 1) whether, there is any evidence that the difference in the levels can be justified on the basis of a difference in the cost of the items forming those levels, and 2) whether, assuming there is no justification for the disparity, does that lack of justification render the dispari-

4. After the preliminary injunction was vacated in the instant case, the defendants agreed not to change the schedules pending the outcome of this litigation.

ties in schedules violative of the Social Security Act and regulations.

### The Disparity in Levels of Benefits

Resolution of the first issue would normally be difficult, time consuming, and result in a lengthy opinion. But in the posture of this case most of the findings necessary to the decision of this issue have already been stated by the three-judge court. Rothstein v. Wyman, *supra.* That court found that there was no evidence justifying any disparity in the level of schedules between New York City and the surrounding counties. The court stated that

"[t]here is not a scintilla of evidence that the difference between the level of the schedules prescribed by the Legislature for New York City and for its surrounding counties, respectively, could be justified on the basis of a difference in the cost of the essential items forming the basis of those levels." Rothstein v. Wyman, *supra,* 303 F.Supp. at 347.

Rather, the court found that the cost of the essential items forming the schedules was the same for New York City as for the surrounding counties. Rothstein v. Wyman, *supra,* at 347.

The court also dealt with a number of the rationales defendants put forth to justify the disparate schedules. The court found not "an iota of evidence to support an assumption that welfare recipients encounter . . . a 'higher social cost of living' " in New York City than in the surrounding counties. Rothstein v. Wyman, *supra* at 349.

The only new facts presented to the court since the decision of the three-judge court support that court's findings. These facts include:

1) The United States Department of Labor's Bureau of Labor Statistics still continues—as recently as April 1, 1970—to prepare and present cost of living material for the New York metropolitan area without drawing any distinction between New York City and the surrounding counties. *See* Rothstein v. Wyman, *supra* at 344 n. 4.

2) In November, 1969 defendant Wyman recommended to the Governor and the legislature that "one statewide standard of assistance for all basic items of need, exclusive of shelter costs" be enacted. The Commissioner stated that:

"The effect of variation in other (than shelter) items of basic need in different regions results in approximately the same total cost of living in households comprised of the same number of persons in all such regions." 103d Annual Report of the New York State Board of Social Welfare (1970).

The bill implementing this recommendation was not enacted.

3) On June 1, 1970 defendant Wyman stated under oath (in a related case, Rosado v. Wyman, *supra*) that he has no data to support differential allowances in New York City and the surrounding counties. *See* Plaintiffs' Exhibit E.

4) Finally, in complying with the three-judge court's order which restrained the promulgation of grants "other than according to objective, nondiscriminatory standards . . ." defendant Wyman ordered that the New York City schedule be used for the seven suburban counties.

Thus, it is clear that the present disparate schedules are discriminatory and not based on objective standards.

If it is true, as plaintiffs contend, that the Social Security Act requires that welfare programs be conducted on a statewide basis pursuant to uniform standards, the present statutory schedules of benefits in New York would be in violation of the Act.

### The Uniformity Requirement

Three statutory provisions provide support for the requirement of statewide uniform standards. These statutory provisions, contained in both 42 U.S.C. § 602 and § 1382 are: 1) the requirement that each state welfare plan must be in effect in all political subdivisions of the state; 2) the requirement that there be statewide financial participation in each state welfare program; 3) the require-

ment that a "single state agency" must be designated to administer the program.

In interpreting these provisions HEW has held

"that the benefits of the programs will be equally available to all eligible persons; and that *state policies, standards and methods will apply equally to persons in like situations wherever they may live.* United States Department of Health, Education, and Welfare, Part II, § 4300 (hereinafter HEW Handbook) (Emphasis added).

Moreover, each state, according to HEW, is responsible for providing assistance "on a basis consistent with equitable treatment of all eligible individuals in similar circumstances throughout the State, in accordance with the intent of the Social Security Act" and must avoid "inequitable provision for assistance and administration among localities within a State . . ." HEW Handbook, Part II, § 3300.

Additional support for state-wide uniform standards is found in 45 C.F.R. § 233.20 which requires that state plans "[p]rovide that the standard [of assistance] will be uniformly applied throughout the State."

These regulations in conjunction with the three statutory requirements set forth in the Social Security Act expressly seek to insure the even-handed application of standards within each state. As the three-judge court recognized, the Act and regulations

"appear to be aimed at the fundamentally sound objective of assuring that persons in like circumstances should be treated equally throughout a state . . . ." Rothstein v. Wyman, *supra* at 350–351.

Thus, the New York statute and the regulations promulgated thereunder, which provide non-uniform levels of benefits to recipients similarly situated, are in clear violation of the uniformity requirements of the Social Security Act and the HEW regulations.[5] Indeed, the United States has indicated in a brief filed in the Supreme Court in this case that the New York schedules of benefits are in violation of the Social Security Act and the regulations. Brief for the United States as *Amicus Curiae* at 7–14. To the same effect see a letter from James Callison, HEW Regional Commissioner, to defendants, dated April 16, 1969. Even the defendants, at the oral argument, conceded that the schedules of grants in § 131–a violate the HEW regulations.

Defendants have only three contentions of any substance in defense of the disparate schedules and the clear violation of the regulations. First, they argue that the legislature found that "there exist differences in the cost of meeting * * * [the] needs of public assistance recipients in various areas of the state * * *", Chapter 120 Laws of 1970, and that this finding supports the Commissioner's intention to promulgate different schedules of benefits. This position seems questionable when it is practically undisputed that the legislative findings are without factual support. *See,* Brief for HEW at 20–24, Boddie v. Wyman, 434 F.2d 1207 (2d Cir.) In addition, such findings have been repeal-

---

5. It is appropriate to note that the test employed by the court in judging whether a particular disparity violates the Act and regulations is not the same test employed in judging whether a disparity violates the Equal Protection Clause.

Little purpose would be served by the uniformity sections of the Act and regulations if they merely repeated the requirements of the Equal Protection Clause. Thus, the court concludes that the Act and regulations require stricter uniformity, as to similarly situated people, than does the Equal Protection Clause. This conclusion is bolstered by a reading of the legislative history of the Act and the purposes of the uniformity requirement.

However, in the instant case, the disparities in levels of benefits are so without rational basis that they would violate the Act and regulations even under a test similar to that employed in Equal Protection cases.

ed by the enactment of a new § 131-a. Chapter 517 Laws of 1970.

Defendants' second contention is that the power granted to the Commissioner in § 131-a to raise the schedules of the surrounding counties to the level of New York City, provides an "escape valve" to the statute's invalidity. In other words, if local districts can prove that the costs of essential items are the same as they are in New York, the Commissioner can raise their schedules. The court finds that this "escape valve" does not remedy the defect in the statute. The statute is defective in that it requires residents of the surrounding counties, similarly situated to people living in New York City, to struggle for parity, while the people in New York City automatically receive the higher benefits. Rothstein v. Wyman, 303 F.Supp. 339, 343. Absent any cost difference, as has been found in this case, parity should be the initial touchstone of the statute. Letter from HEW to defendant Wyman, August 7, 1970.

Defendants' third contention is that the non-conformity in this case is only between the New York statute and the HEW regulations. They argue that there is no conflict between the New York statute and the federal statute, and that, therefore, injunctive relief is not warranted. Even if defendants were correct in their contention, the court could still grant injunctive relief. The Secretary of HEW has express authority to promulgate regulations consistent with the statute. 42 U.S.C. § 1302. These regulations are accorded the force and effect of law if in conformance with the statute. King v. Smith, 392 U.S. 309, 317, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970). The court finds that the regulations involved in this case, and more particularly 45 C.F.R. § 233.20, are in conformity with the policy expressed in 42 U.S.C. § 602 and § 1382.

Additionally, the court finds that the non-conformity in this case is with federal statutes, 42 U.S.C. § 602 and § 1382, as well as with the HEW regulations. A fair reading of the federal statutes makes clear the necessity for statewideness and uniformity in standard of need. For a similar holding see Boddie v. Wyman, 323 F.Supp. 1189 at 1192 (N.D.N.Y. 1970) (Foley, J.)

### Relief

██ ██ The court is presented with a difficult question as to the proper remedy in this case. Defendants contend that the sole remedy open to this court is to cut off the receipt of federal funds by the state. Rosado v. Wyman, 397 U. S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). Plaintiffs, on the other hand, request the court to issue an injunction restraining the enforcement of § 131-a, insofar as it conflicts with the Social Security Act, King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

The power of federal courts to enjoin the enforcement of state public assistance statutes which conflict with the provisions of the Social Security Act is clear. King v. Smith, supra. However, where the cost of compliance with federal requirements is "massive" and the state plan does not have a "discrete and severable provision whose enforcement can be prohibited" the appropriate relief is for the court to order the cutoff of federal funds. Rosado v. Wyman, supra, 397 U.S. at 421, 90 S.Ct. 1207.

The situation in the instant case falls in a gray area somewhere between King and Rosado. The disparate schedules set forth in § 131-a are not as clearly severable from the state plan as was the definition of "parent" in King v. Smith. Yet, the schedules in § 131-a are clearly more discrete than the state plan involved in Rosado. In addition, there are 125,-000 AFDC and AABD recipients in the seven surrounding counties, and equalizing their schedules with those of New York City residents will result in a substantial cost to the state. However, this

rise in cost will be nowhere near the cost involved in *Rosado*. Upon weighing the above, the court finds that the facts in this case are closer to King v. Smith, *supra* than to Rosado v. Wyman, *supra*. This finding, when combined with the drastic and harmful effect on state welfare plans and recipients caused by the cut off of federal monies, makes the injunctive remedy the more appropriate.[6] For a similar ruling on almost the precise facts of the instant case see Boddie v. Wyman, 323 F.Supp. 1189 at 1193.

Moreover, the legislature has anticipated the possibility that federal law might require a raise in the level of benefits for recipients in the surrounding counties. As pointed out previously, Section 131–a allows the Commissioner to raise benefits as federal law requires. Thus the state has already made known its decision to comply with federal requirements rather than withdraw from the sharing program. This clearly distinguishes this case from *Rosado*.

Accordingly, the court adopts the relief granted by the three-judge court in the original *Rothstein* opinion and restrains the defendants "from further enforcement or implementation of § 131–a of the New York Social Services Law, or from promulgating schedules of grants and allowances of public assistance, or making payments thereof to recipients, other than according to objective, non-discriminatory standards based upon the cost of the needs of such recipients." Rothstein v. Wyman, *supra*, 303 F.Supp. at 351.

Submit order on notice.

So ordered.

6. In addition, once the state has elected to join the federal welfare program it must abide by federal standards. As the court has found, the Social Security Act and regulations give to the plaintiffs federally protected rights. It is clear that "where federally protected rights

have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946).