Leonard **YOUNG** and Betty J. **Young,** husband and wife, individually, on behalf of their minor children and all persons similarly situated,

v.

Robert **HARDER,** Director, et al.

Civ. A. No. W–5044.

United States District Court,
D. Kansas.

June 26, 1973.

R. Michael Jennings, Stephen J. Blaylock, Legal Aid Society Neighborhood, Wichita, Kan., Jerry G. Elliott, Robert E. Shields, Wichita, Kan., for plaintiffs.

Charles V. Hamm, Woody D. Smith, Bruce A. Roby, Legal Division, State Dept. of Social Welfare, Topeka, Kan., for Robert C. Harder, State Dept. of Social Welfare & the State Bd. of Social Welfare.

Kenneth F. Beck, Wichita, Kan., for Marvin Rosene, Dir., Sedgwick Co., and others.

## ORDER

THEIS, District Judge.

This class action arises from the interplay and alleged conflict between the Uniform Relocation Assistance and Real Properties Acquisition Policies Act of 1970 (hereinafter referred to as "Uniform Relocation Act"), 42 U.S.C.A. § 4621 et seq., the Social Security Act of 1935, as amended, 42 U.S.C.A. § 601 et seq., and the Kansas State Board of Social Welfare's "value of moderate home" rule, Kansas Public Assistance Manual, Items 2233 and 2441.1, adopted pursuant to K.S.A. § 39–708. Plaintiffs seek a declaratory judgment that the "value of moderate home" rule is contrary to the provisions of the Uniform Relocation Act and the Social Security Act of 1935, and is unconstitutional because, as administered, it denies plaintiffs equal protection of the law. Plaintiffs, in addition, seek appropriate injunctive relief. Jurisdiction is founded on 28 U.S.C.A. §§ 1331, 1343(3), 2201.

### FACTUAL BACKGROUND AND CLAIMS OF THE PARTIES

In 1970, the Uniform Relocation Act was enacted by Congress in order to "establish a uniform policy for the fair and equitable treatment of persons displaced as a result of federally assisted programs in order that such persons shall not suffer disproportionate injuries as a result of programs designed for the benefit of the public as a whole." In 1971, the individual plaintiffs owned and occu-

pied a home at 2331 Fairview, Wichita, Kansas. This address was within the boundaries of an area designated for voluntary rehabilitation by the Wichita Urban Renewal Agency. Plaintiffs made application in July, 1971, for a grant to rehabilitate their home—however, upon inspection by the Urban Renewal Agency it was determined that restoration was economically unfeasible and the agency offered to purchase plaintiffs' home for $6,930.00. Subsequently, plaintiffs purchased another home at 1844 South Broadway for a total purchase price of $18,500.00. Since this residence qualified as a replacement dwelling under the Uniform Relocation Act, plaintiffs became eligible for a replacement housing payment, which was determined on the basis of federally approved criteria to be $11,880.13. The Wichita Relocation Agency required plaintiffs to apply the net replacement housing payment on the down payment of their replacement home. Plaintiffs presently have an equity of $11,600.00 in their home at 1844 South Broadway.

Throughout this period the plaintiffs were receiving an Aid to Dependent Children entitlement of $115.00 per month. This payment, together with a $286.00 per month Social Security Disability Insurance benefit constituted plaintiffs' monthly income. Plaintiffs' household includes four children and one grandchild, making a total of seven. On April 20, 1972, the County Welfare Board denied plaintiffs' application for approval of their purchase of a replacement dwelling for the reason that the value of their equity would exceed the "moderate home value" rule. The "moderate home value" rule provides that a client's home will be considered a resource in determining need when the equity exceeds by $750.00 the maximum value determined by the County Board. The Sedgwick County Board of Social Welfare has determined the value of a moderate home to be $7,500.00. The County Board's decision was sustained by the Kansas State Board of Social Welfare. As a result, plaintiffs' welfare entitlement to a cash grant and medical care terminated on January 31, 1973.

Premised on their belief that the "value of moderate home" rule is antagonistic to the purpose of the Uniform Relocation Act and the Social Security Act of 1935, as well as violative of the Fourteenth Amendment, plaintiffs advance four claims. First, they claim Section 216 of the Uniform Relocation Act, 42 U.S.C.A. § 4636, requires defendants to disregard the equity which plaintiffs have in their home to the extent the value of the equity equals the amount of their replacement housing payment. Section 216 of the Uniform Relocation Act, provides as follows:

"No payment received under this subchapter shall be considered as income for the purposes of Title 26; or for the purposes of determining the eligibility or the extent of eligibility of any person for assistance under the Social Security Act or any other Federal law."

Pursuant to this mandate, the Secretary of Health, Education and Welfare promulgated 45 C.F.R. § 233.20 (a)(4)(ii)(a), which provides that in determining need and the amount of assistance payment for A.F.D.C., any payment under the Uniform Relocation Act shall be disregarded. This regulation has been interpreted by officials in the Department of Health, Education and Welfare as requiring that the replacement home, as well as the payment, may not be considered as a *resource* for purposes of determining eligibility. On the other hand, both the Sedgwick County Board of Social Welfare and the Kansas Board of Social Welfare, take the position that although the payment cannot be considered as income or a resource, once the payment is applied to the purchase of a dwelling, the equity which the client has in that dwelling must be considered in determining the client's continuing eligibility. Plaintiffs contend the defendants' interpretation of the "value of moderate home" rule to require inclusion of an equity obtained by application of the Uniform Relocation Act payments

in determining their eligibility for assistance, is contrary to the Uniform Relocation Act and the regulations of the Secretary of Health, Education and Welfare and, therefore, under the supremacy clause, must be declared invalid. See Carleson, Director, Department of Social Welfare v. Remillard, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972); Townsend v. Swank, 404 U.S. 282, 92 S. Ct. 502, 30 L.Ed.2d 448 (1971).

Second, plaintiffs claim defendants' denial of public assistance constitutes an invidious discrimination against recipients of replacement housing payments. By including an equity obtained by using payments received under the Uniform Relocation Act in determining eligibility, the defendants force plaintiffs to spend part or all of their replacement housing payment on necessities other than a replacement home. They assert this discrimination bears no reasonable relationship to any legitimate state purpose and denies them equal protection of the law.

In their third claim, plaintiffs invoke Section 402(a) of the Social Security Act, 42 U.S.C.A. § 602(a) and Part II, § 4300 of the U. S. Department of Health, Education and Welfare Handbook on Public Assistance Administration, which together require equal treatment of persons in like situations and uniform application of specific eligibility factors. They claim the procedure or scheme by which the moderate home value rule is administered denies them uniform treatment. Each county welfare board is authorized to determine the value of a moderate home under guidelines contained in the Kansas Public Assistance Manual, Items 2233, et seq. In Sedgwick County, the value of. a moderate home has been determined to be $7,500.-00, whereas in Shawnee County, the value has been set at $12,500.00. According to plaintiffs, such differences as this are not reasonably based on objective differences in cost or any other geographical difference rationally related to the provisions and purposes of the Social

Security Act, and are therefore contrary to the Social Security Act.

Plaintiffs' fourth claim reiterates the foregoing, and further states the inter-county variance is without a rational basis, and since it bears no reasonable relationship to a legitimate state interest, it constitutes an invidious discrimination against public assistance applicants residing in Sedgwick County, and denies them equal protection of the law.

Defendants have yet to respond to plaintiffs' claims and instead have interposed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim. Plaintiffs, in addition to resisting defendants' motion, seek issuance of a preliminary injunction. Having carefully reviewed the materials and authorities, the Court finds the defendants' motion to dismiss should be denied and plaintiffs' application for a preliminary injunction granted.

## JURISDICTION

With respect to their claim that the "value of a moderate home" rule conflicts with federal statutes, plaintiffs assert jurisdiction exists under 28 U.S.C. A. § 1331, 28 U.S.C.A. § 1343(3), and under the doctrine of pendent jurisdiction. In order for jurisdiction to lie under 28 U.S.C.A. § 1331, it must be shown, first, that the matter in controversy exceeds the value of $10,000.00, and second, the action arises under the Constitution, laws, or treaties of the United States. Defendants assert that plaintiffs' first claim fails to present a federal question, nor does the value in controversy exceed $10,000.00.

Since plaintiffs' first claim rests principally on provisions of the Uniform Relocation Act, the Court perceives, as a preliminary matter, the question of whether plaintiffs have any rights under this statute which they can vindicate in this action. The mere fact that neither the statute nor the regulations adopted pursuant thereto explicitly provide for an individual remedy does not necessarily preclude the existence of

one. A private civil remedy may be implied where from the legislative purpose and history of the statute and from the thrust of the regulations it is plain that those protected by the Act are intended to have an individual interest. *Tunstall v. Brotherhood of Locomotive Firemen and Enginemen,* 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187 (1944); *Gomez v. Florida State Employment Service,* 417 F.2d 569 (5th Cir. 1969). The Uniform Relocation Act has as its overriding purpose the protection of individuals displaced as a result of a federally assisted program and exists to insure that these persons will be fairly and equally treated. These plaintiffs are the intended beneficiaries of the Act and, if the purposes of the Act are to be effectuated, what better method of enforcement is there than an action such as this one. If the Uniform Relocation Act is to be a viable safeguard against victimization of those displaced as a result of a federally assisted program, every displaced individual should, in this Court's opinion, be afforded a remedy in federal court to vindicate his rights under the Act.

■■ While the existence of a federally protected right is imperative in order to establish jurisdiction under 28 U.S.C.A. § 1331, a federal question is not established solely upon an allegation that a federally protected right is in issue. In addition, the pleadings must reveal the asserted federal right is an essential element of the cause of action and the asserted right is such that it will be supported if the federal law is given one construction, and defeated if given another. *Gully v. First National Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Midwestern Development, Inc. v. City of Tulsa,* 333 F.2d 1009 (10th Cir. 1964); *Simpson v. Utah,* 365 F.2d 185 (10th Cir. 1966). When measured against the foregoing requirements, the plaintiffs' complaint reveals incontestably that the action arises under the laws of the United States. As was previously held, the plaintiffs have a federally protected right under the Uniform Relocation Act, particularly under Section 216,

42 U.S.C.A. § 4636. The whole controversy is contingent upon whether the provisions of Section 216 and the regulation found at 45 C.F.R. 233.-20(a)(4)(ii)(c) require defendants to disregard plaintiffs' equity in their home to the extent it equals their replacement housing payment. With respect to this claim then, the ultimate outcome depends on the interpretation to be given the statute and regulation. Thus, not only does the statute and regulation give rise to the plaintiffs' right, but also, depending on the construction ultimately given them, govern resolution of the controversy. Unquestionably, the plaintiffs' first claim presents a federal question.

■ The second element required for jurisdiction under § 1331 is the presence of the requisite value in controversy, otherwise known as the jurisdictional amount. On this issue, plaintiffs have the burden of proof. *McNutt v. General Motors Acceptance Corporation,* 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). For this reason, the jurisdictional amount is generally calculated from the plaintiffs' viewpoint. *Kheel v. Port of New York Authority,* 457 F.2d 46 (2d Cir. 1972). Here, plaintiffs are asserting that under the provisions of 42 U.S.C.A. § 436, and the regulation defendants are required to disregard the entire replacement housing payment of $11,600.00 and not just the $3,350 difference between it and the moderate home value. Only if the Court is able to find from the pleadings either that plaintiffs' claim is not well founded in federal law, or that it appears to a legal certainty the claim is actually for less than the jurisdictional amount, can the action be dismissed. *Martinez v. Richardson,* 472 F.2d 1121 (10th Cir. 1973); *A. C. McKoy, Inc. v. Schonwald,* 341 F.2d 737 (10th Cir. 1965). In this case, the Court cannot say the pleadings disclose that the claim is not well founded in federal law, nor can he conclude to a legal certainty the claim is actually for less than the jurisdictional amount. Accordingly, the Court finds he has juris-

diction of plaintiffs' first claim under 28 U.S.C.A. § 1331.

From the fact that plaintiffs have a federally protected right under Section 216 of the Uniform Relocation Act, it does not perforce follow that jurisdiction lies also under 28 U.S.C.A. § 1343(3). Although the "personal versus property right" dichotomy on which defendants rely for the proposition that the Court has no jurisdiction under Section 1343(3) was interred in Lynch v. Household Finance Corporation, 405 U. S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), there still remains the requirement under § 1343(3) that the Act of Congress under which the federal right is being asserted has been one providing "for equal rights of citizens . . . ." This requirement appears to be a formidable barrier to maintenance of actions similar to this one under § 1343(3).

■ In Gomez v. Florida State Employment Service, supra, the Court found jurisdiction existed under § 1343(3) on the basis that Civil Rights Act, 42 U.S.C.A. § 1983 itself is an "act of Congress providing for the protection of equal rights." However, this view of Section 1983 has not attracted widespread support. Note, Lynch v. Household Finance Corp.: Jurisdictional Ramifications, 24 Stanford L.R. 1134, 1144 n.75 (1972). The current majority view appears to be that Section 1983 is not *itself* an act for the protection of equal rights, and therefore it must be established that the statute conferring the right sought to be protected, must be one for the protection of equal rights. Note, Lynch v. Household Finance Corp.: Jurisdictional Ramifications, supra, at 1142; see New York v. Galamison, 342 F.2d 255, 266–268 (2d Cir. 1965), cert. den., 380 U.S. 977, 85 S.Ct. 1342, 14 L.Ed.2d 272 (1965); cf. Rosado v. Wyman, 414 F.2d 170 (2d Cir. 1969), rev'd on other grounds, 397 U.S. 397, 90

S.Ct. 1207, 25 L.Ed.2d 442 (1970). This interpretation of § 1343(3) finds substantial support in the legislative histories of its various predecessors. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L. Ed.2d 492 (1961). Thus far the Supreme Court, apart from noting the discrepancy between § 1343(3) and § 1983, has refrained from clarifying it. Lynch v. Household Finance Corp., supra; King v. Smith, 392 U.S. 309, 312 n.3, 88 S.Ct. 2128, 2130 n.3, 20 L.Ed.2d 1118 (1968). While § 1343(3) may well be the more expedient method of resolving asserted statutory or regulatory conflicts involving termination of welfare payments, this Court considers the language of § 1343(3) prevents maintenance of this claim as a civil rights action because Section 216 of the Uniform Relocation Act is not a statute providing for equal rights. The final jurisdictional basis advanced by plaintiffs is that this claim is so closely related to their second claim that the Court should assume pendent jurisdiction. Whether pendent jurisdiction exists as to this claim must necessarily be discussed in connection with the jurisdictional basis for plaintiffs' second claim.

■ ■ Plaintiffs' second claim alleges that defendants' denial of public assistance constitutes an invidious discrimination against them and denies them equal protection of the law. Jurisdiction is said to exist under 28 U.S.C.A. § 1343(3) and relief is sought pursuant to the Civil Rights Act, 42 U.S.C.A. § 1983. There are two requirements which must be met before jurisdiction exists under Sections 1983 and 1343(3):[1] First, the conduct complained of was by a person acting under color of state statute or local law, custom and usage; second, while so acting, deprived another of rights, privileges, or immunities secured by the Constitution and laws of the United States. Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.

---

1. In Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), the Court noted that when a constitutional violation is alleged under

Section 1983, Section 1343(3) provides jurisdiction and both sections are to be construed identically.

Ed.2d 142 (1970) ; Monroe v. Pape, supra; Palacios v. Foltz, 441 F.2d 1196 (10th Cir. 1971) ; Endicott v. Van Petten, 330 F.Supp. 878 (D.Kan.1971). That defendants were acting under color of state law is indisputable. In this case, defendants were at all times acting under authority granted by Kan.Stat. Ann. §§ 39–708, 712, 713. Any action taken by a state official in the purported exercise of authority conferred upon him by a state law is action under color of state law. Adickes v. S. H. Kress & Co., supra; Wall v. King, 206 F.2d 878 (1st Cir., 1953). There remains then the question of whether plaintiffs allege a violation of a right secured by the Constitution.

Plaintiffs assert the moderate home value rule invidiously discriminates against them for the reason that it differentiates among welfare recipients who also receive relocation payments based on the use to which the payment is put. Thus, a recipient who applies his payment to purchase an equity in his home in excess of the moderate home value is penalized, whereas a recipient who applies his payment elsewhere, or even squanders it, remains eligible for social welfare. This classification is said to bear no reasonable relationship to the announced purpose of the rule, which is to force recipients with adequate resources to use them rather than to rely on welfare. Since this purpose is in no way served by classifying recipients of relocation housing payments on the basis of their use of the payment, plaintiffs contend they are denied equal protection of the law.

 Although each state has considerable latitude in allocating its welfare funds, it may not engage in invidious discrimination contrary to the guarantees of the Fourteenth Amendment. Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). So long as the classification made by the state has some "reasonable basis," it does not offend the Constitution. Richardson v. Belcher, 404 U.S.

78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971) ; Dandridge v. Williams, supra. However, when it is alleged the state's classification has no reasonable basis and discriminates against recipients, then jurisdiction exists under § 1343. Rosado v. Wyman, supra; King v. Smith, supra. Here, plaintiffs are contending defendants' denial of public assistance denies them equal protection of the law. Only if their claim is so attenuated and unsubstantial as to be absolutely devoid of merit, or is very plainly frivolous, can subject matter jurisdiction be denied. Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). In light of several recent decisions of the Supreme Court, it is plain a claim that a state welfare regulation bears no rational relationship to a legitimate state purpose and invidiously discriminates against public assistance recipients states a claim over which this court has jurisdiction. See, e. g., Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972) ; Richardson v. Belcher, supra. Accordingly, this Court has jurisdiction of the plaintiffs' claim that the defendants' denial of public assistance violates their right to equal protection of the laws.

 Having decided that subject matter jurisdiction exists with respect to plaintiffs' second claim, the question of whether pendent jurisdiction exists as to plaintiffs' statutory claims can now be resolved. Two prerequisites set forth in United Mineworkers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), must be established before pendent jurisdiction exists. First, the federal claim must have substance enough to confer subject-matter jurisdiction. This prerequisite has already been established. Second, both claims must derive "from a common nucleus of operative facts," i. e., plaintiffs' claims must be such that they would ordinarily be expected to try them all in one judicial proceeding. In this case, both claims arise from a common basis —the defendants' alleged refusal to comply with federal statute and regulations

by disregarding the housing replacement payment for purposes of determining their eligibility for public assistance. When the pendent claim will ultimately require interpretation of a federal statute and of nationally applicable federal regulations, the case is particularly strong for assumption of pendent jurisdiction. Rosado v. Wyman, supra; Almenares v. Wyman, 453 F.2d 1075 (2d Cir. 1971). The ultimate disposition of plaintiffs' claims will depend upon the construction to be given Section 216 of the Uniform Relocation Act and the regulations adopted by the Secretary of Health, Education and Welfare. This being the case, the Court concludes exercise of pendent jurisdiction is particularly appropriate and holds accordingly.

Plaintiffs' third and fourth claims likewise originate from a common source. Each state is compelled by the Social Security Act and the regulations promulgated thereunder to afford equal treatment to persons in like situations and to uniformly apply specific eligibility criteria. Sections 402(a) and 1602(a) of the Social Security Act, 42 U.S.C.A. §§ 602(a) and 1382(a); U. S. Department of Health, Education and Welfare, Handbook of Public Assistance Administration, Pt. II, § 4300. Plaintiffs contend the variance between the moderate home value adopted by the Sedgwick County Welfare Board and the values adopted by other counties are not based on objective differences and bear no rational relationship either to the provisions and purposes of the Social Security Act or to any legitimate state purpose. Therefore, plaintiffs claim, first, that the Kansas moderate home value rule fails to comply with the federal law and is invalid under the Supremacy Clause; and second, that the inter-county variations in moderate home values constitute an invidious discrimination against public assistance applicants and registrants residing in Sedgwick County, thereby violating their right to equal protection of the laws.

Jurisdiction of the statutory claim is claimed to exist under 28 U.S.C.A. § 1331 and § 1343(3), and under the doctrine of pendent jurisdiction. No attempt is made to place a monetary value on the rights infringed by the purported statutory conflict; consequently, no jurisdiction exists under § 1331 which requires assertion of a jurisdiction amount of at least $10,000.00. Nor is there jurisdiction under § 1343(3). As previously noted, before jurisdiction exists under § 1343(3) over a statutory claim, it must be established that the statute is one providing for equal rights. The Social Security Act is not such a statute and thus jurisdiction cannot be premised on § 1343(3). Rosado v. Wyman, supra. This leaves only the doctrine of pendent jurisdiction.

Under the criteria announced in *Gibbs*, the federal claim must have substance enough to confer subject matter jurisdiction. Plaintiffs' fourth claim asserts their right to equal protection of the laws is infringed by administrative decisions made in compliance of the moderate home value rule. Jurisdiction is founded on § 1343(3). What was noted with respect to plaintiffs' second claim applies here. While a state has considerable latitude in administering public assistance, it cannot, consistent with the Fourteenth Amendment, invidiously discriminate against an applicant or recipient of public assistance. Dandridge v. Williams, supra. When it is alleged that a state statute or regulation itself, or as applied, bears no reasonable relationship to a legitimate state purpose and discriminates against an applicant or recipient, then jurisdiction exists under § 1343(3). Jefferson v. Hackney, supra; Richardson v. Belcher, supra; Rosado v. Wyman, supra; King v. Smith, supra. Here, plaintiffs contend they are being denied equal protection by a non-objective county-by-county determination of moderate home value. The Court cannot say this claim is either frivolous or unsubstantial—hence, jurisdiction exists.

The second requirement announced in *Gibbs* is that "the state and federal claims must derive from a common nucleus of operative fact." The nucleus of both the federal claim and the pendent claim is the same—namely, the "moderate home value" rule as administered throughout the state. Resolution of the statutory claim presents basically a question of federal law and will require interpretation of the Social Security Act and the regulations of the Secretary of Health, Education and Welfare. When the pendent claim presents, as it does here, a predominately federal question, the exercise of pendent jurisdiction is especially appropriate. Rosado v. Wyman, supra; Almenares v. Wyman, supra. Accordingly, the Court concludes he should exercise pendent jurisdiction over plaintiffs' third claim.

## DEFENDANTS' MOTION TO DISMISS

Having found jurisdicion over all of the plaintiffs' claims, there remains defendants' motion to dismiss for failure to state a claim. Defendants assert that the "moderate home value" rule is neither contrary to Section 216 of the Uniform Relocation Act, in conflict with the uniformity provisions of the Social Security Act, or violative of plaintiffs' right to equal protection and, therefore, plaintiffs' fail to state a claim. Before granting a motion to dismiss, the Court must be convinced to a certainty that plaintiffs are entitled to no relief under any state of facts which could be proved in support of their claim. Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); Jones v. Hopper, 410 F.2d 1323 (10th Cir. 1969), cert. den., 397 U.S. 991, 90 S.Ct. 1111, 25 L.Ed.2d 399 (1970). Regarding the two statutory claims, they appear, at least from the pleadings, to have substantial merit. Defendants rely on the difference in language between Section 216 of the Uniform Relocation Act—income, and the Kansas Administrative Regulation—resource, which they claim are materially different. How-

ever, in view of the legislative intent underlying the Uniform Relocation Act and the policy underpinnings of the "moderate home value" rule, the Court is initially persuaded that defendants are endeavoring to place form above substance and to obscure a meritorious claim in a semantic fog. This Court cannot say that plaintiffs will be unable to support their claim that the "moderate home value" rule conflicts with the Congressional direction in Section 216 of the Uniform Relocation Act.

Likewise, plaintiffs' claim that the inter-county differences in the moderate home value violate the federal uniformity requirement, appears to have prima facie merit. Taking as true plaintiffs' statement that the moderate home value in Shawnee County is $12,500.00, as compared with $7,500.00 in Sedgwick County, the Court, taking into consideration his own knowledge of the geographical, economical and demographic differences between the two counties, cannot state with the required certainty that this disparity reflects entirely objective differences. Accordingly, plaintiffs must be afforded the opportunity to prove their claim.

With respect to plaintiffs' constitutional claims, the Court has previously held them not to be either unsubstantial or frivolous. Having already made this determination, the Court would be hard-pressed to hold they are totally without merit and should be dismissed for failure to state a claim. Indeed, there is some question as to whether a dismissal on the basis that a constitutional claim is unsubstantial or is frivolous should be termed "jurisdictional." Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). In both claims plaintiffs assert a deprivation of equal protection because of a state classification which derives from the "value of a moderate home" rule. Neither of these classifications are said to be a rational relationship to a legitimate state purpose. Thus, their claim is not predetermined by prior law. See Dandridge v. Williams, supra. Nor does

it appear to a certainty that plaintiffs will be unable to establish a state of facts in support of their claim. Defendants' motion to dismiss for failure to state a claim must therefore be denied.

THREE-JUDGE COURT QUESTION

The Court's holding that plaintiffs' constitutional claims are substantial, raises a further problem with respect to jurisdiction. Under 28 U.S.C.A. §§ 2281, 2284, the Court is required to request convening of a three-judge court when an injunction enjoining a state statute on grounds of unconstitutionality is requested. In this case, the Court has determined that the constitutional claims are substantial and since an injunction is requested, it might appear a three-judge court is required.[2] On the other hand, the two statutory claims seem to have substantial merit and, at this stage, it appears their resolution may well obviate the need to determine the constitutional issue. The Court is thus confronted with the problem of whether it ought to request the convening of a three-judge court. Determination of this problem, in the Court's appraisal, requires a balance be struck between two competing policies.

 First, there is the policy underlying Section 2281, which is to provide a more responsible forum for litigation of suits which might ultimately result in declaring void state statutes. Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965). On the other hand, there is a long-standing preference of deciding statutory claims rather than constitutional claims. Rosado v. Wyman, supra. Although a three-judge court has jurisdiction to decide the statutory claims, so does a single judge, and the judicial time and energy necessarily expended by convening a three-judge court indicates to this Court that it should proceed to try the non-constitutional issues before requesting the convening of a three-judge court.

In arriving at the same outcome as this Court, Judge Newman, of the United States District Court for the District of Connecticut, stated the considerations in Connecticut Union of Welfare Employees v. White, 55 F.R.D. 481, as follows:

"A possible hazard of such a practice is that there may be duplication of effort if it subsequently develops that the non-constitutional issues are not dispositive and that a three-judge court is needed. . . . The choice is between the risk of wasting the time of two potential members of the three-judge court on matters that may never require their consideration, or the risk of wasting the time of the single judge (and the parties) in relitigating some matters a second time. The latter risk can usually be substantially moderated by the judicious use of the record already made before the single judge . . . Moreover, such an approach enables a court to adhere to the policy of considering non-constitutional issues in advance of constitutional issues."

 In *Rosado,* the Supreme Court explicitly affirmed as the better practice, remanding the statutory claim to the single district judge. The affirmance rested on considerations of judicial time and crowded court calendars. It occurs to this Court that these considerations are even better served by resolving the statutory questions first, and then requesting the convening of a three-judge court, if necessary, to resolve the constitutional question. Moreover, this practice seems to at least have the tacit approval of the Tenth Circuit Court of Appeals. Vialpando v. Shea, 475 F.2d 731 (10th Cir. 1973). Therefore, the Court concludes it should proceed to determine the merits of the statutory claims and will request convening

---

2. There are technically four constitutional claims presented in plaintiffs' complaint. The so-called statutory claims have their foundation in the Supremacy Clause, Art. VI, Cl. 2; however, these claims have been held not to require a three-judge court. Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965).

of a three-judge court only if the statutory claims do not resolve this action.

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

 Lastly, there remains plaintiffs' motion for a preliminary injunction. Since it was just decided that this Court will limit itself to the statutory questions, the propriety of an injunction must be determined on the basis of the statutory claims. It is well-settled, however, that a district court can grant interim relief in accordance with traditional equitable principles on the basis of statutory claims like those presented here. Rothstein v. Wyman, 336 F.Supp. 328 (S.D.N.Y.1970); Alvarado v. Schmidt, 317 F.Supp. 1027 (W.D.Wis. 1970); Wyman v. Rothstein, 398 U.S. 275, 90 S.Ct. 1582, 26 L.Ed.2d 218 (1970) (per curiam).

 There are two guiding principles to be followed when considering injunctive relief—the extent irreparable injury will result if no relief is granted, and the probability of plaintiffs' ultimate success. Previously, the Court has commented upon the merits of plaintiffs' claim and from these comments it should be obvious the Court considers plaintiffs' likelihood of ultimate success to be good. This leaves only the question of whether plaintiffs will suffer irreparable harm if no injunction is entered.

 Prior to the time their ADC grant was terminated, plaintiffs had a total monthly income of $400.00 per month, plus medical care. Seven persons were dependent on this income for subsistence. The ADC grant and the Social Security Disability benefit constituted plaintiffs only source of income. Thus, when their ADC grant, with its attendant medical care, was terminated, plaintiffs were reduced to living on a monthly income of $286.00, or $40.85 apiece, and in addition they had to assume the burden of paying for their own medical care. Additionally, the Court takes judicial notice that burgeoning inflation in living costs has occurred since plaintiffs' cutoff date. Under such circumstances, a more devastating economic injury to a family can hardly be imagined. On the other hand, if defendants are required to continue paying benefits to plaintiffs pending determination of the merits, they will not be especially damaged. First, under Rule 65(c) of the Federal Rules of Civil Procedure, the Court must require the posting of a bond. Second, Kan.Stat.Ann. § 39–720 (1972 Supp.), establishes a presumption that assistance was obtained fraudulently upon proof the recipient possesses or did possess resources which would render him ineligible for assistance. As applied to this case, if defendants' inclusion of plaintiffs' equity as a resource is subsequently sustained, then upon proof of the amount of plaintiffs' equity, defendants would be entitled to a presumption that the assistance was fraudulently obtained, and could recover the payments in a civil action. Thus, as between plaintiffs and defendants, the equities heavily favor plaintiffs. Furthermore, the Court has not been directed to any statute or case which give plaintiffs a legal remedy. Therefore, the Court concludes plaintiffs have established both irreparable harm and a probability of success, and holds an injunction should issue.

It is therefore ordered that defendants' motion to dismiss be, and the same is hereby, denied.

It is further ordered that defendants immediately redetermine plaintiffs' eligibility for public assistance payments, without including their $11,600.00 equity in their home as a resource, and, if it is determined they are eligible for assistance, payments are to be commenced without delay. Further, if the parties determine there are no other proceedings necessary to final resolution of the issues arising in this case before this Court, then plaintiffs should be reimbursed by defendants for all payments withheld since their cutoff date.

It is further ordered that plaintiffs give security in a form acceptable to the Court in the amount of $500.00.